### PICHER v. BRISK et al.

### Civ. No. 40.

District Court, D. Maine, N. D.

Oct. 24, 1940.

F. Harold Dubord, of Waterville, Me., for plaintiff.

Ernest L. Goodspeed, of Augusta, Me., for defendants.

Arthur B. Levine, of Waterville, Me., for defendant Harry Brisk.

Perkins & Weeks, of Waterville, Me., for defendant Metropolitan Life Ins. Co.

PETERS, District Judge.

The plaintiff, receiver of the People's-Ticonic National Bank, brings this action to obtain a declaratory judgment against Harry Brisk, administrator of the estate of his father, Jacob Brisk, and the Metropolitan Life Insurance Company, to establish ownership of a life insurance policy for $14,000, written by the defendant company in 1922 upon the life of Jacob Brisk and payable to his estate.

Jacob Brisk in 1927 assigned the policy to the Ticonic National Bank, as collateral for an indebtedness of his to that bank. Subsequently the assets of the Ticonic National Bank were transferred to the People's-Ticonic National Bank, of which the plaintiff is receiver, and he, as such, succeeded to the rights of the first bank as to the matter in controversy.

Jacob Brisk having died in 1939 while the policy was in force, the life insurance company became liable for the amount of the policy, but its ownership being disputed —as both the plaintiff receiver and the defendant administrator had made demands on the company for payment—the amount agreed to be due on the policy was paid into court and the company discharged from further liability.

The question for determination is whether the plaintiff in his capacity as receiver was the absolute owner of the policy at the

time of the death of Jacob Brisk, and now of its proceeds, or whether the administrator of Brisk has an interest in the nature of a right of redemption or right to purchase upon payment of a certain sum less than the amount of the policy.

The decision of the case depends wholly upon the facts which affect the title to the policy, and which I find to be as follows, having heard the case without a jury:

Jacob Brisk continued to owe the Ticonic Bank from 1927—when the policy was assigned to it by an assignment absolute in form but admittedly as collateral security—until January 24, 1931, when the indebtedness amounted to about $28,000. Of this amount $15,300 was represented by four notes each of which was secured to some extent by a mortgage of real estate. Four other notes, aggregating $12,629.05, were not secured by real estate or other security, except that in the case of one note of $1,500 the insurance policy in question had been pledged as security with the usual clause giving the bank the right to use the security, or the proceeds of it, in payment of any other notes held by the bank. On that date, January 24, 1931, Jacob Brisk made a composition settlement with his creditors, including the bank. The settlement with the bank was evidenced by a written agreement from which it appears that the parties divided the eight notes referred to into two groups, those having real estate security, being the four notes aggregating $15,300, and the other four notes, aggregating $12,629.05. On the latter notes the bank gave a credit of $4,000, which was for the insurance policy, and accepted twenty percent of the balance in full payment, expressly stipulating that the release of liability did not affect the four so-called mortgage notes, liability on which was preserved as before.

Afterward, it seems that three of the four mortgage notes were taken out of the picture by settlement or realization on the real estate security, leaving, at the time this action was brought, only the $5,000 or shoe factory note, so called, held by the bank on which nearly $6,000 was due. The real estate securing this note had become practically valueless. So, after the settlement and after the three real estate notes were eliminated, the bank held the insurance policy, for which it had allowed $4,000, and the $5,000 shoe factory note.

At that time, on the face of the transaction, the bank either owned the policy outright and held the $5,000 note practically unsecured, or it held the policy as security for the $4,000, with interest and premiums paid, and the $5,000 note and interest. In either of these cases there would be nothing coming to the estate of Brisk under the policy, because the proceeds of it are less than the aggregate indebtedness mentioned.

The defendant Brisk, however, claims that he had a verbal agreement with the president of the bank whereby the Brisks could buy or redeem the policy at any time for $4,000 plus premiums and interest.

There is nothing to evidence such an agreement but some oral testimony which is not convincing as against the evidence to the contrary and the reasonable probabilities of the case.

To support the Brisk claim it must be held that he had what amounted to a continuing option on the policy for $4,000, plus premiums and interest, without limit as to time, under which he could await the death of Jacob Brisk and exchange something more than $4,000 for $14,000—the difference depending upon the date of death.

It is quite clear that the minds of the parties met in no such agreement. It is absolutely denied by the president of the bank with whom the conversation was had—a gentleman not now connected with this bank but president of another. It involved release of security for the $5,000 note which the bank had and which the president considered of potential value. It is inconsistent with the attitude of the officers of the bank at the time and immediately after the settlement. Before that time the policy was carried by the bank as collateral. Immediately afterward it was transferred to an assets account and thereafter carried as such. While held as collateral, the insured, Brisk, paid the premiums. After the settlement and the credit of $4,000 given Brisk for the policy, the bank paid the premiums.

No claim of a right to buy the policy was made by the Brisk family from 1931 until after the death of the elder Brisk in 1939. Shortly before that event the younger Brisk tried to buy the policy and had negotiations with the receiver, which came to nothing. At that time he asserted no rights.

The evidence is insufficient to support the claim of the Brisk estate, and judgment must be for the plaintiff as owner of the policy entitled to its proceeds. Plaintiff recovers costs.